# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

EILEEN PARKER, as the Personal
Representative of THE ESTATE OF
AARON MICHAEL PARKER,
deceased,

      Plaintiff,

v.                                CASE NO.: 4:21-cv-00189-AW-MAF

CITY OF TALLAHASSEE, a
political subdivision of the State of
Florida; DAVID NORTHWAY,
Individually; STEPHEN
DEUTSCHMAN, Individually;
CLIFFORD CROUCH, Individually;
DOUGLAS KUTCHERA, Individually;
TRENT ROBERTS, Individually;
CHRISTOPHER ROTH, Individually;
RUSSELL SCHNEIDER, Individually;
and STEPHEN SHIELDS, Individually,

      Defendants.

_____/

## MOTION TO DISMISS AMENDED COMPLAINT

DEFENDANTS, **DAVID NORTHWAY, individually, STEPHEN
DEUTSCHMAN, individually, CLIFFORD CROUCH, individually,
DOUGLAS KUTCHERA, individually, TRENT ROBERTS, individually,
CHRISTOPHER ROTH, individually, RUSSELL SCHNEIDER, individually,
and STEPHEN SHIELDS, individually,** (collectively "the Individual

Defendants"), through their undersigned counsel, and pursuant to Rule 12(b)(6), Fed. R. Civ. P., and Local Rule 7.1, move to dismiss all or certain claims filed against each of them in Plaintiff's Amended Complaint [ECF. 16], specifically those claims in Counts 1, 2, and 3, as detailed below. In support, the Individual Defendants state:

1.     Plaintiff initiated this matter in this Court by filing a complaint on May 7, 2021. [ECF. 1]. On June 17, 2021, the Individual Defendants filed a Motion to Dismiss [ECF. 13] and a Motion to Strike Hedonic Damages [ECF. 14]. Plaintiff filed her Amended Complaint on June 29, 2021, and this Court consequently entered an Order denying both motions as moot. [ECF. 17].

2.     This is an action alleging civil rights violations brought under 42 U.S.C. §1983 on behalf of Aaron Michael Parker who died on February 18, 2018. Three (3) Section 1983 claims are alleged against eight (8) sworn law enforcement officers of the Tallahassee Police Department in their individual capacities as follows:

| Count 1 | Failing to Intervene and Stop Unreasonable and/or Excessive Use of Force during the Illegal Detention and Arrest |
| Count 2 | Unreasonable and Excessive Force |
| Count 3 | Deliberate Indifference to Serious Medical Needs |

3. All of the Individual Defendants are entitled to an order of dismissal as to all counts because the Amended Complaint continues to constitute an impermissible shotgun pleading, prohibited by the Eleventh Circuit.

4. The Individual Defendants should be dismissed from Count 1 because the Complaint fails to allege specifically which Individual Defendants failed to intervene during what alleged "unreasonable or excessive" use of force. As detailed below, although the Amended Complaint is vague and unclear, there appear to be three distinct uses of force at issue: Defendant Northway's alleged unconstitutional deployment of his Department-issued Taser [ECF. 16 at p. 7, ¶ 19]; Defendant Deutschman's alleged physical strikes [Id. at p. 8, ¶ 21]; and all of the Individual Defendants' use of the Excited Delirium Pin. [Id. at p. 7, ¶ 20].

5. Defendant Northway cannot be liable for failing to intervene his own use of force; and Plaintiffs have failed to allege that he saw or was aware of Defendant Deutschman's alleged use of force. Likewise, the Amended Complaint is silent as to which, if any, of the Individual Defendants either saw or had the opportunity to intervene with respect to either Defendant Northway's or Defendant Deutschman's alleged use of force. With respect to the use of the Excited Delirium Pin, there are no factual allegations (as opposed to legal conclusions) to support any conclusion that the use of that force was either unconstitutional, or that the law was clearly established that the use of the pin was unconstitutional.

6.     For the same reason as that contained in the preceding paragraph, Individual Defendants Crouch, Kutchera, Roberts, Roth, Schneider, and Shields should be dismissed from Count 2, because the facts alleged in support of that Count fails to show that any of these Defendants used excessive force against Parker. Additionally, even if the facts minimally state a constitutional violation, these specific Defendants are entitled to qualified immunity.

7.     Finally, all of the Individual Defendants should be dismissed from Count 3. Plaintiff has failed to allege facts, as opposed to conclusions, that each of the Individual Defendants was aware that Parker had a serious medical condition, and that in spite of that knowledge, that each Individual Defendant deliberately disregarded it. This is especially highlighted by the facts alleged in the Amended Complaint that Emergency Medical Technicians (EMTs) were on scene almost immediately after the 911 call. [ECF. 16 at p. 6, ¶¶ 16, 18].

WHEREFORE, for the reasons that follow, the Individual Defendants respectfully request this Court grant the instant motion, and dismiss Counts 1, 2, and 3 in Plaintiff's Amended Complaint, as stated above.

# MEMORANDUM OF LAW

In compliance with Local Rule 7.1(E), the Individual Defendants submit this memorandum of law.

## A.     The Complaint Remains an Impermissible Shotgun Pleading

A few months ago, the Eleventh Circuit's Chief Judge observed in *Barmapov v. Amuial:*

> Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Id.* (alterations adopted) (quoting *T.D.S.*, 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)). Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro*, 878 F.3d at 1295 (alterations adopted) (internal quotation marks omitted). We have "little tolerance" for them. *Id.*

*Barmapov*, 986 F.3d 1321, 1324 (11th Cir. 2021).

Plaintiff's Amended Complaint continues to warrant dismissal as an impermissible shotgun pleading. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). A "shotgun pleading" is a complaint that violates Federal Rules of Civil Procedure 8(a)(2), 10(b), or both. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Plaintiff's Amended Complaint actually adds a type of shotgun pleading prohibited under Eleventh Circuit case law, bringing the total to three out of four. *Barmapov*, 986 F.3d at 1324-25.

Unlike its predecessor, the Amended Complaint improperly "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before…" *Id*. This earmarks the first type of shotgun pleading. Here, Count 2 incorporates all allegations which preceded it, including those in Count 1. [ECF. 16 at p. 11, ¶ 33]. Count 3 goes one step further, alleging all preceding allegations, and even paragraphs that follow, some of which are in Count 4, a *Monell* claim against the City of Tallahassee. [ECF. 16 at p. 13, ¶ 39]. Such pleading has been rejected time and again in this Circuit.

In addition, the Amended Complaint continues to be filled with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action, falling within the second type of prohibited shotgun pleading. *Weiland,* 792 F.3d at 1322. The Amended Complaint has reduced the number, and with it the specificity, of factual allegations than its earlier version, leaving only a very vague and indefinite set of allegations against the Individual Defendants.

For example, after introducing the officers in Paragraphs 3 through 10, Plaintiff alleges the Individual Defendants "responded to the scene at different times." [ECF. 16 at p. 6, ¶ 17]. Plaintiff then alleges:

> 19.   The initial responding officers, NORTHWAY and SHIELDS, observed PARKER, who was in the median was naked, singing, dancing who then ran into the bushes. NORTHWAY then

deployed his taser and proceeded to tase the decedent numerous times, while the other individual officers named herein ADMINISTERED, a completely fabricated hold, or what they have called the Excited Delirium Pin, and further pinned and restricted the decedent from breathing, while repeatedly tasing the decedent, causing him to expire from Rhabdomyolysis.

20. All individual officer Defendants either used excessive force on the decedent, when they repeatedly tased, struck, pinned down, and otherwise tortured the decedent, WHILE HE WAS HANDCUFFED, until he expired, or failed to stop the other individual officers named herein of the same aforementioned conduct. During this time, SHIELDS grabbed PARKER'S right arm and utilized a thigh lock maneuver to control him. Officers DEUTSCHMAN, SHIELDS, KUTCHERA, ROBERTS, ROTH, NORTHWAY and SCHNEIDER all simultaneously pinned the decedent to the ground by having their knees, thighs, arms or legs on the hand, neck, feet, head, and abdomen of the decedent who was being handcuffed, tased, and administered numerous injections, causing the decedent to expire, or allowed the other officers named herein to do so.

[ECF. 16 at p. 7, ¶¶ 19-20].

On the Excessive Force claim in Count 2, Plaintiff continues to allege that all officers had some role, which remain undefined and improperly grouped together:

34.  All named individual Defendants used excessive force when: arresting; handcuffing; tasing; illegally pinning the decedent to the ground; tasing and pinning the decedent to the ground while he was handcuffed, not allowing him to breathe; and causing the decedent to expire from RHADOBYOLISIS, and other complications. The unreasonable use of force and use of multiple taser deployments against PARKER deprived PARKER of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to PARKER under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment and under 42 USC 1983.

35.  Defendants were integral in neglecting the situation and using excessive force upon PARKER, resulting in PARKER'S ultimate and untimely death.

36.  This use of deadly force was excessive and unreasonable under the circumstances, especially since PARKER was in a state of a mental health emergency and was unaware of his actions at the

time. Defendants knew or should have known that PARKER was suffering from a medical emergency and should have taken precautions given the totality of the circumstances. Defendants' actions thus deprived PARKER of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

[ECF. 16 at pp. 11-12, ¶¶ 34-36]

As it pertains to the Deliberate Indifference claim in Count 3, Plaintiff has failed to allege that any officer knew Parker was suffering from excited delirium and/or any other health or mental health issues. *Compare* [ECF. 1 at ¶¶ 19, 20, 21, 23, 28, 29]. Incorporating the Paragraph 36, quoted above, with the "knew or should have known" language, the Amended Complaint then summarily alleges:

40. Individual Defendants' denial of medical care deprived PARKER of treatment for his medical emergency, giving rise to the officers' introduction to PARKER and capitalized by the extensive injuries assailed against PARKER.

41. The Defendants were aware of the current condition of PARKER and the possible consequences that might have occurred if

> Defendants did not perform proper precautions in arresting
> PARKER and disregarded his need for immediate medical care.

[ECF. 16 at p. 13, ¶¶ 40-41]. The only allegation in the common factual allegations which pertains to this issue is equally vague, claiming that "these Defendants were deliberately indifferent to the decedent's known medical needs and further worsened the decedent's condition by, in essence, torturing the decedent, thereby causing Rhabdomyolysis thereby causing the decedent to expire." [Id. at p. 8, ¶ 23].

In addition, the Amended Complaint continues to assert multiple claims against the Individual Defendants as a group without specifying which of the Individual Defendants is responsible for which act/omission. This type of pleading represents the fourth type of prohibited shotgun pleading. *Weiland,* 792 F.3d at 1323. Plaintiff alleges each cause of action against all "Individual Defendants," reciting threadbare legal conclusions and incorporating buzz words in an attempt to make the claims sound plausible, which is improper.

For these reasons, this Court should dismiss Plaintiff's Amended Complaint.

### B.     Plaintiff's Factual Allegations Fail Under *Iqbal* and *Twombly*

As shown above, the Amended Complaint is replete with vague and conclusory allegations and devoid of factual detail. Rather than meeting the deficiencies spelled out in the Individual Defendants' Motion to Dismiss head-on, Plaintiff's Amended Complaint contains *less* factual detail. In addition, Plaintiff -

has in the most conclusory form - demonized the use of force known as the Excited Delirium Pin. Specifically, Plaintiff has referred to it as "a completely fabricated hold" and "dangerous and fatal". [ECF. 16 at p. 7, ¶ 19; p. 8, ¶ 22]. This is the only alleged force committed by the majority of the Individual Defendants; specifically, all except Northway and Deutschman.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[;]" *Twombly*, 550 U.S. at

555 (citation omitted); and requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, . . . (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca–Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012).

The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: first, eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

An examination of the facts of *Iqbal* illustrates the type of allegations that the Supreme Court considered too conclusory to support a claim for relief. *Iqbal* involved a *Bivens* complaint brought by a Pakistani Muslim who was detained following the September 11, 2001, terrorist attacks, which alleged that the Attorney

General and FBI Director violated the plaintiff's civil rights by adopting an unconstitutional policy that subjected him to harsh conditions of confinement based on his race, religion or national origin. The *Iqbal* Court recited from the Complaint the following allegations:

> "[T]he [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." It further alleges that "[t]he policy of holding post– September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation."

556 U.S. at 669 (Internal citations to paragraphs of the Complaint omitted).

In determining that the allegations were insufficient to establish a plausible claim for relief, the Court began its analysis by identifying the allegations of the Complaint that were not entitled to the assumption of truth because they were conclusions or bare assertions that were merely recitations of the elements of the cause of action. The Court, therefore, disregarded allegations that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race and/or national origin and for no legitimate penological interest;" that

13

defendant Ashcroft "was the principal architect of this invidious policy;" and, "that Mueller was instrumental in adopting and executing it." 556 U.S. at 680-81. The Court then turned to the second step of the analysis, which was to examine whether the factual allegations that remained were sufficient to establish a plausible claim for relief, and determined they were insufficient.

Under *Twombly* and *Iqbal*, it is not sufficient to merely allege the elements of the claims for relief without providing sufficient factual detail to establish the reasonable plausibility of the claim. And while, as a general rule, the Court must accept a plaintiff's factual allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff, *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002), the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Additionally, the court "may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *City of South Miami v. DeSantis*, 424 F. Supp. 3d 1309, 1321 (S.D. Fla. 2019) (quoting *Am. Dental Ass'n*, 605 F.3d at 1290).

In her Amended Complaint, Plaintiff has once again failed to provide the factual detail required under *Iqbal* and *Twombly*. For the reasons stated above, this Court should dismiss the Amended Complaint against the Individual Defendants.

**C.**     **The Facts Fail to Allege any Constitutional Violation for Excessive Use of Force, and to the Extent They Do, Qualified Immunity Applies.**

As demonstrated above, the Amended Complaint is anything but clear. It appears that Count 2 may be based on three different uses of force: Defendant Northway's alleged unconstitutional deployment of his Department-issued Taser [ECF. 16 at p. 7, ¶ 19] ("NORTHWAY then deployed his taser and proceeded to tase the decedent numerous times…"); Defendant Deutschman's alleged physical strikes [Id. at p. 8, ¶ 21] ("DEUTSCHMAN . . . used a closed fist to strike PARKER in the face and head multiple times."); and all of the Individual Defendants' use of the Excited Delirium Pin. [Id. at p. 7, ¶ 20] ("Officers DEUTSCHMAN, SHIELDS, KUTCHERA, ROBERTS, ROTH, NORTHWAY and SCHNEIDER all simultaneously pinned the decedent to the ground by having their knees, thighs, arms or legs on the hand, neck, feet, head, and abdomen of the decedent who was being handcuffed, tased, and administered numerous injections . . .").

For purposes of this particular argument only, Defendants Northway and Deutschman do not move to dismiss the constitutional claims set forth in Count 2 that are based on the first two uses of force identified above. However, all of the

Individual Defendants move to dismiss Count 2 for any execution of the Excited Delirium Pin. Further, to the extent Plaintiff's bases her Failure to Intervene claim in Count 1 on the various uses of force, the allegations fail to identify with any specificity what each Individual Defendant knew and/or when each Individual Defendant had the opportunity to intervene. In addition, all of the Individual Defendants assert that dismissal of Count 3 is appropriate under the current law in the Eleventh Circuit on deliberate indifference to serious medical needs, and the allegations pled.

1. Excessive Force

In determining whether a constitutional violation exists under the Fourth Amendment for excessive force, the primary question is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. at 397. Factors included in the analysis are the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id*. at 396. The question of reasonableness must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. citing *Terry v. Ohio*, 392 U.S. at 20-22.

The force allegedly used by *all* of the Individual Defendants is the Excited Delirium Pin. Although her original Complaint alleged Parker continued to resist,

the Amended Complaint has conveniently eliminated this concession, a fact which will undoubtedly arise again at the summary judgment stage. No matter, as Plaintiff has not and cannot allege why or how the Pin – which has only been described *factually* as the Individual Defendants "having their knees, thighs, arms or legs on [PARKER'S] hand, neck, feet, head, and abdomen" – is unconstitutionally excessive. Plaintiff's *conclusory* allegations that the Pin is fake, fatal, or otherwise unconstitutional must be rejected.

 2. Failure to Intervene

 As detailed above, it is nearly impossible to decipher from Plaintiff's allegations which Individual Defendant failed to intervene with respect to which specific use of force. Independent of the grounds above warranting dismissal, this failure to properly plead factual allegations requires dismissal for failure to state a claim under Section 1983, especially where issues of qualified immunity exist.

 In March, the Eleventh Circuit issued its opinion in *Helm v. Rainbow City, Alabama*, 989 F.3d 1265 (11th Cir. 2021). That case involved the use of a Taser against a minor experiencing seizures at a concert, and, as it pertains to this motion, whether other officers failed to intervene. Reversing summary judgment for the officers based upon factual disputes, the Court summarized the law in this area:

> [A]s this Court expressed in *Priester*, "[t]hat a police officer had a duty to intervene when he *witnessed* the use of excessive force and had the *ability* to intervene was clearly established in February 1994." *Id.* at 927. Moreover, in cases where the use of force is declared clearly

> unconstitutional, the officers that failed to intervene are "no more entitled to qualified immunity than [the officer using force]." *Edwards*, 666 F.3d at 1298. Once this Court establishes that the use of force is not entitled to qualified immunity and other officers could have intervened but did not, the Court does not conduct a separate clearly established analysis pertaining to each officer's failure to intervene. *See id*.

Helm, 989 F.3d at 1278 (Emphasis added).

Here, Plaintiff has failed to allege which Individual Defendant witnessed what or whether he had the ability to intervene. With three potential uses of force and eight Individual Defendants, such a failure is fatal to properly stating a claim.

In addition, as stated above, the Excited Delirium Pin is not an unconstitutional use of force. Nor can Plaintiff show any case in this Circuit which provided the clearly established bright line to support such an argument. As such, to the extent Count 1 is based upon an Individual Defendant failing to intervene with respect to the use of the Excited Delirium Pin, qualified immunity is appropriate.

### 3. Deliberate Indifference to a Serious Medical Need

To state a claim of deliberate indifference to a serious medical need, Plaintiff must allege: 1) an objectively serious medical need; 2) an official was deliberately indifferent to that need; and 3) the official's deliberate indifference and Parker's injury were causally related. *Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. 2019).

In the original Complaint, Plaintiff alleged two of the Individual Defendants – Northway and Shields – knew Parker had an objectively serious medical need, to-

wit, excited delirium. In the Amended Complaint, there is no allegation that any Individual Defendant knew this, except in the most conclusory form. As such, all of the Individual Defendants are entitled to dismissal from Count 3.

Parker was a pretrial detainee, and, as such, his constitutional right to medical care derives from the Fourteenth Amendment. *Hamm v. DeKalb County*, 744 F.2d 1567, 1572 (11th Cir.1986). But the conceptual distinction between the Fourteenth Amendment rights of a pretrial detainee and a convicted person's rights under the Eighth Amendment has no practical impact on this Court's analysis of Plaintiff's claims, based on Eleventh Circuit jurisprudence:

> [T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs. Because both the Eighth Amendment cases and Fourteenth Amendment cases establish what constitutes "deliberate indifference," [the Court] will rely upon decisions in both types of cases.

*Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n. 6 (11th Cir.1997) (citation omitted); *Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir.1988). *See also Patel v. Lanier County, Georgia*, 969 F.3d 1173, 1188 (11th Cir. 2020).

Although the delay of providing medical care for a serious medical need may constitute an act of deliberate indifference, *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999), here the allegations in Plaintiff's Complaint assert that Leon County

Emergency Medical Technicians were on scene within five minutes of the 911 call. (ECF. 1 at ¶¶ 16, 18). As such, there can be no credible theory that Northway or Shields caused any delay.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). The plaintiff bears the burden of establishing both prongs. *Hoffer v. Secretary, Florida Dept. of Corrections*, 973 F.3d 1263, 1270 (11th Cir. 2020) (citing *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

"To meet the first prong, the plaintiff must demonstrate an 'objectively serious medical need'—i.e., 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' and, in either instance, 'one that, if left unattended, poses a substantial risk of serious harm.'" *Hoffer*, 973 F.3d at 1270. To satisfy the second, subjective prong, the plaintiff must prove that the officers "acted with deliberate indifference to [his serious medical] need." *Id.*, (quoting *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted).

To establish deliberate indifference, Plaintiff must allege that Northway and Shields "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Hoffer*, 973 F.3d at 1270. The

third factor – that a public official "acted with more than gross negligence" – was recently clarified by the Eleventh Circuit in *Hoffer*:

> We pause briefly to flag a tension within our precedent regarding the minimum standard for culpability under the deliberate-indifference standard. Although we have repeatedly noted that "a claim of deliberate indifference requires proof of more than gross negligence," *e.g., Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (emphasis added), another line of our cases favors the phrase "more than mere negligence," *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (emphasis added). A panel of this Court recently suggested that "the 'more than mere negligence' standard in *McElligott* is more consistent with [*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)] than the 'more than gross negligence' standard in *Townsend*." *Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016). These competing articulations—"gross" vs. "mere" negligence—may well represent a distinction without a difference because, as explained below, the Supreme Court itself has likened the deliberate-indifference standard to "subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 839–40, 114 S.Ct. 1970 (emphasis added). Accordingly, no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard.

*Hoffer*, 973 F.3d at 1270, n. 2 (emphasis added).

In *Farmer*, the Supreme Court, reaffirming that imposing liability under the Eighth Amendment against an official requires subjective intent, held, "[T]o act recklessly . . . a person must 'consciously disregar[d]' a substantial risk of serious harm." *Farmer*, 511 U.S. at 839 (citing *Model Penal Code* §2.02(2)(c)). The *Hoffer* Court emphasized "the stringency of the deliberate-indifference standard," and confirmed that "deliberate indifference is not a constitutionalized version of

common-law negligence." *Hoffer*, 973 F.3d at 1271 (quoting *Swain v. Junior*, 961 F.3d 1276, 1287-88 (11th Cir. 2020) (emphasis in original)).

> "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" *Id.* (quoting, respectively, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and *Farmer v. Brennan*, 511 U.S. 825, 839–40, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." *Harris*, 941 F.2d at 1510 (quotation omitted). Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505 (quotation omitted).

*Hoffer*, 973 F.3d at 1271. Here, there is no allegation or facts to infer that the conduct of Northway or Shields was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." As such, dismissal is appropriate.

In addition, as alleged in the Complaint, EMTs arrived at the scene shortly after the first officers. In analogous cases, those who are not trained in medicine are fully able to rely on those who are, and such reliance forecloses any deliberate indifference claim. "Under our circuit's precedent, when a lay person is accused of deliberate indifference, the plaintiff must 'present[ ] evidence that her situation was so obviously dire that . . . [officers] must have known that a medical professional had grossly misjudged [the plaintiff's] condition.'" *Kuhne v. Florida Dept. of*

*Corrections*, 818 F. App'x. 498, 507 (11th Cir. 2015) (quoting *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1159 (11th Cir. 2010)). "[W]hen the plaintiff has received treatment from medical professionals, correctional officers are entitled to rely on the medical judgments made by those medical professionals." *Carter v. Butts*, Case No.:5:18-cv-423, 2020 WL 1882908, *6 (M.D. Ga. March 18, 2020). *See also Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1050 (11th Cir. 2014) ("A sheriff cannot be held liable for failing to segregate mental health inmates whom trained medical personnel have concluded do not present a risk of harm to themselves or others."); *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (the law with respect to prisoners' Eighth Amendment deliberate indifference claims encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so); *Acosta v. Watts*, 281 Fed. Appx. 906, 908 (11th Cir. 2008) (supervisory officials cannot be held liable for a constitutional tort when their decisions were grounded in a decision made by medical personnel); *Drake ex rel. Cotton v. Koss*, 445 F. 3d 1038, 1042-43 (8th Cir. 2006) ("… it is not deliberate indifference when an official relies on the recommendations of a trained professional. … [T]he law does not require a jailer to second-guess or disregard a psychiatrist's opinions or treatment recommendations.") (internal quotation and citation omitted). For these reasons, this Court should find that Northway and

Shields did not violate Parker's constitutional rights, and dismiss Count 3. Moreover, even if the Court believes this is a close call on the substantive violation, qualified immunity should apply.

## **CONCLUSION**

Based on the foregoing, the Individual Defendants seek an Order:

1.      Dismissing Plaintiff's Amended Complaint on the basis that it constitutes an impermissible shotgun pleading.

2.      Dismissing all or some of the Individual Defendants from Count 1 of Plaintiff's Complaint alleging Failure to Intervene.

3.      Dismissing Individual Defendants Crouch, Kutchera, Roberts, Roth, Schneider, and Shields from Count 2 of Plaintiff's Amended Complaint alleging Excessive Force, and Individual Defendants Northway and Deutschman from any claim based upon the use of the Excited Delirium Pin.

4.      Dismissing all of the Individual Defendants from Count 3 of Plaintiff's Complaint alleging Deliberate Indifference to a Serious Medical Need.

Dated this 20th day of July, 2021.

Respectfully submitted,

/s/ Michael P. Spellman
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
E-mail: mspellman@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Individual Defendants*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 5,515 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 20th day of July, 2021, a true and correct copy of the foregoing was electronically filed in the US District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Michael P. Spellman
**MICHAEL P. SPELLMAN**